UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLEVELAND M. REGIS, IV, | : |
| Plaintiff, | : **Hon. Joseph H. Rodriguez** |
| v. | : Civil Action No. 12-7549 |
| INTERNATIONAL PAPER CO., et al. | : |
| Defendants. | : **O P I N I O N** |

Presently before the Court is Plaintiff Cleveland M. Regis, IV's ("Regis") motion to remand and for attorneys' fees. The Court has considered the written submissions of the parties and for the reasons that follow, the motion is granted and the case will be remanded to the Superior Court of New Jersey, Burlington County Vicinage. The Court will not award fees.

## I. Background

Regis is suing his former employer International Paper Company ("IPC") and his former supervisor Frederick R. Klawunn ("Klawunn") for ancestry and race discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq. and in violation of New Jersey public policy. IPC has an Attendance Point Policy which assesses points to an employee for absences and lateness. See Compl. at ¶22. Bereavement leave is an excused absence that does not trigger the assessment of points. Id. IPC may terminate employment if the total attendance point count exceeds the policy limit of ten points. Regis took approved bereavement leave for the death of

1

his biological grandfather, James Pullen. The approval for the bereavement leave was rescinded after Regis could not prove his lineage and was assessed two points. As a result, his attendance policy points totaled ten and one half points and he was terminated.

Regis claims he was treated disparately because of his race and that the decision of Defendants to retroactively rescind the approval of bereavement leave constitutes ancestry discrimination because it denies fair bereavement to persons like Regis, who have non-traditional family relationships. Id. at ¶36. Regis has no documentary proof that James Pullen is his biological grandfather. By all official accounts, James Pullen is Regis' great-uncle, but the Complaint details a different relationship.

Regis' grandmother, Evelyn Pullen, was married to Ottawa Pullen. Ottawa is James Pullen's brother. Evelyn and James had a "sordid affair." Id. at ¶ 17 and 13. As a result of the affair, Evelyn gave birth to Regis' mother, Fran Pullen. Id. Even though James is Fran's biological father, Ottawa Pullen (Evelyn's husband) is listed as the father on Fran's birth certificate. And because news of the affair did not please James' living children, neither Fran nor Regis were recognized as descendants in James' obituary. Id. at ¶17. All of the forgoing leave Regis without documentation that James Pullen was his biological grandfather.

Klawunn initially granted Regis' request for bereavement leave for November 22, 23, and 24 of 2010. Id. at ¶ 20. Regis claims that he would not have gone to James' funeral if the request was denied. Id. at ¶34. Following his return from leave, Klawunn called Regis into his office to discuss Regis' absence from James Pullen's obituary. Id. at

¶ 24. Regis explained the relationship and was asked to produce documentation.[1] Id. at ¶ 26. Although he was unable to produce documentation supporting his relationship to James Pullen, Regis provided Klawunn with the telephone numbers of his mother and aunt; both women would attest to the relationship. Id. at ¶30. The Defendants did not investigate Regis' claims and the bereavement leave was retroactively rescinded. Id. at ¶ 31. Regis was suspended without pay and assessed two points, causing him to exceed IPC's limit. Regis was then terminated.

## II. Procedural Posture

Regis filed suit in the New Jersey Superior Court on October 1, 2012. The Complaint alleges only state law claims. IPC was served on October 25, 2012 and Klawunn was served on November 10, 2010. The parties engaged in discovery practice and depositions were noticed. See Schorr Cert., ¶ 7, Ex. B. The Notice of Removal was filed on December 10, 2012 by Klawunn and IPC joined. Although there is no dispute that Regis and Klawunn are both New Jersey citizens, jurisdiction is solely predicated upon 28 U.S.C. § 1332. Defendants, in removing, allege that Klawunn was fraudulently joined to the action to frustrate removal and that Klawunn's citizenship must be disregarded for jurisdiction purposes. Defendants further argue that no cause of action exists against Klawunn individually under the NJLAD.

Plaintiff seeks remand because, as a non-diverse defendant, Klawunn had no right to remove based upon diversity jurisdiction. Under Plaintiff's argument, IPC cannot remove because it was out of time and cannot join Klawunn's improper removal.

---

[1] The IPC bereavement policy extends to immediate family only, which includes grandparents. Id. at ¶21.

Plaintiff also claims that Klawunn is liable under an "aiding and abetting" theory under the NJLAD, N.J.S.A.10:5-12(e).  For the reasons that follow, the Court finds that there is a cognizable cause of action plead against Klawunn and that the matter must be remanded for lack of diversity jurisdiction.

## II. Standard of Review

Jurisdiction lies only if Defendant Klawunn is fraudulently joined to this action.  If Klawunn is not fraudulently joined, then diversity jurisdiction is lacking pursuant to 28 U.S.C. § 1332 and the case must be remanded to the New Jersey Superior Court, Burlington County Vicinage.

Joinder is fraudulent if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Briscoe, 448 F.3d at 216 (citing Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985)); see also Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111-112 (3d Cir. 1990) (Joinder is fraudulent if the "action against the individual defendants is defective as a matter of law.").  "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (citing Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-1441 (11th Cir. 1983)).

Defendants must demonstrate that the non-diverse party was fraudulently joined to avoid remand.  Batoff v. State Farm Ins. Co., 977 F.2d 848, 851  (3d Cir. 1992).  Defendants carry a "heavy burden of persuasion" in that showing.  Id., (citing Steel

Valley Author. v. Union Switch & Signal Div., 809 F.2d 1006, 1012 n. 6 (3d Cir. 1987)). The Court must assume as true all factual allegations of the plaintiff's complaint and resolve any uncertainties in the law in favor of the plaintiff. Batoff, at 852. However, the Court can give limited consideration to reliable evidence proffered by the defendant in support of removal. In re Briscoe, 448 F.3d 201, 220 (3d Cir. 2006).

In considering limited evidence, the Court must not "step[] from the threshold jurisdictional issue into a decision on the merits." Boyer, 913 F.2d 112; see also Batoff, 977 F.2d at 852.). The Third Circuit has cautioned that "removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand." Brown v. JEVIC, 575 F. 3d 322, 326 (3d Cir. 2009) (citing Batoff, 977 F.2d at 851).

### III. Analysis

Given recent developments in New Jersey case law, Plaintiff has sufficiently plead a claim against defendant Klawunn under the NJLAD.

Pursuant to the NJLAD "[a]ll persons shall have the opportunity to obtain employment … without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, nationality, [or] sex … subject only to conditions and limitations applicable alike to all persons." N.J.S.A. 10:5–4. In addition, N.J.S.A. 10:5–12(a) makes it an unlawful "[f]or an employer, because of the … ancestry and race … of any individual … to refuse to hire or employ or to bar or to discharge … from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[.]"

Plaintiff alleges that Klawunn committed ancestry discrimination against him

because Regis was unable to prove his familial connection to his biological grandfather and therefore denied bereavement rights.  The strictures of the NJLAD extend to individual supervisors.  Under N.J.S.A. 10:5–12(e), it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."  However, "individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism that applies to 'any person'" under N.J.S.A. 10:5–12(e).  Cicchetti v. Morris Cnty. Sheriff's Office, 194 N.J. 563, 594 (2008).

The words "aiding" and/or "abetting" do not appear anywhere in Plaintiff's Complaint.  Defendant argues that this supports the fraudulent joinder theory because the only way Klawunn can be subject to liability in an individual capacity is under the "aiding and abetting" theory cognized in N.J.S.A. 10:5–12(e).  Even if Klawunn comes under NJLAD, Defendant claims that Klawunn must have acted in concert with another entity or individual, because he cannot be charged with aiding and abetting himself.  Defendants cite several cases in this district that hold that one cannot aid and abet his own conduct.  See, e.g., Hunter v. ARC of Union County, No. 10 CV 256, 2012 WL 71758 (D.N.J. Jan. 9, 2012); Tsakonas v. Nextel Communs., Inc., No. 04 CV 1363, 2006 WL 2527998 (D.N.J. Aug. 31, 2006).

The Court finds that the absence of the words aid and abet are not fatal to Plaintiff's cause of action against Klawunn under the NJLAD.  Read as a whole, the allegations set forth a "colorable" claim against Klawunn.  The Court is persuaded by the analysis and reasoning of the District Court in Freichs v. Lifestar Response Corp., 09 CV

6

4460, 2009 WL 3754190 (D.N.J. Nov. 5, 2009). The NJLAD claims against a supervisor in Freichs suffer from the same malady that plagues the present Complaint: the precise phrase "aid and abet" is absent from the allegations and the supervisor and the organization are identified collectively as defendants. Parsing through the claims in Freichs and viewing the claims under the lens of the forgiving standard of fraudulent joinder, the District Court determined that the claims against the supervisor were "colorable" because plaintiff averred that her termination constituted discrimination and that her supervisors carried out the termination. Freichs, 209 WL 3754190, at *2. In addition, the District Court noted that the complaint alleged that her supervisor was her "'direct employer,' thus implying that she was either terminated on his authority or he was responsible for communicating with company decision-makers regarding her disability and eventual firing." Id. at *2.

Here, Regis claims that Klawunn and a human resources manager called him in for a meeting to discuss the obituary (Compl. at ¶24) and asked for documentation of his relationship to James Pullen. See Compl. at ¶¶ 24, 26. Regis claims that Defendants rescinded the bereavement leave approval, suspended him and ultimately terminated him. See, id. at ¶¶ 32, 33, 35. The Court agrees with Plaintiff that there can be no ambiguity as to Klawunn's inclusion in Defendants, as he is the only named individual in the Complaint. As a result, the Court finds that the Complaint sets forth an allegation that Klawunn was Regis' supervisor and that he used his position to discriminate under the NJLAD. See Freichs, 2009 CV 3754190, at *2.

Moreover, the Court rejects Defendant's argument that Klawaunn cannot be charged with aiding and abetting. Defendant's claim that New Jersey case law is clear

that aiding and abetting one's own conduct is not recognized under the NJLAD has been called into question. Although this is a peculiar theory, several Courts have very recently acknowledged its foothold under the NJLAD. See, e.g., Brown-Marshall v. Roche Diagnostics Corp., 10 CV 5984, 2013 WL 3793622, *7 (D.N.J. July 19, 2013) (citing Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001) ("Under the LAD a supervisory employee may be liable for discrimination for aiding and abetting another's (the employer's) violation."); Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 126 (3d Cir. 1999) (holding that when supervisor engaged in "affirmatively harassing acts," he "flouts [his] duty" and "subjects himself and his employer to liability"); Coulson v. Town of Kearny, No. 07–5893, 2010 WL 331347, at *5 (D.N.J. Jan. 19, 2010); Ivan v. Cnty. of Middlesex, 595 F.Supp.2d 425, 462 (D.N.J.2009); Danna v. Truevance Mgmt., Inc., No. 05–5395, 2007 WL 2156361, at *3 (D.N.J. July 25, 2007)).

As Brown-Marshall notes, the litany of decisions cited by Defendant's, for support of its contention that a supervisor cannot be liable for aiding and abetting his own conduct, did not have the benefit of the New Jersey Appellate Division's decision in Rowan v. Hartford Plaza, LTD, LP, No. L-3106-09, 2013 WL 1350095 (N.J. App. Div. April 5, 2013). Rowan recognizes supervisor liability under the NJLAD for aiding and abetting the supervisor's own conduct. Id. at *8. The New Jersey Appellate Division in Rowan recognized the "somewhat awkward theory of liability," that permits supervisor liability when acting in concert but permits a supervisor to escape liability when he acts alone. Id. (citing Hurley, supra, 174 F.3d at 126).

> Based on the "broad and pervasive" reach of the LAD, and the requirement that it be "liberally construed" to effectuate its purpose, any suggestion

8

> that N.J.S.A. 10:5–12(e) permits individual liability for a supervisor who encourages or facilitates another employee's harassing conduct, while precluding individual liability for the supervisor based on his or her own discriminatory or harassing conduct, appears to us to be untenable.

Id.

Although Defendant's argue Rowan cannot be cited for precedential purposes, given that it is an unpublished opinion, the Rowan decision, and Brown-Marshall for that matter, demonstrate the plausible nature of the claim. While Defendant's argument that New Jersey case law is "clear" on the matter may have had support during the brief writing, there appears to be a shift toward expanding the "broad and pervasive" reach of the NJLAD to include the claim plead against Klawunn.

Third Circuit precedent requires the Court to resolve any doubts in favor of remand and remand a case "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants." Boyer, 913 F.2d at 111 (citation omitted). Given the Rowan decision, there is a possibility that the state court will find that the Complaint as plead sets forth a colorable claim against Klawunn. As a result, Klawunn's citizenship cannot be overlooked as Defendant's have not carried the "heavy burden of persuasion." Batoff, 977 F.2d at 851. The matter must be remanded to the New Jersey Superior Court, Burlington County vicinage.

Given that the Rowan decision post dates the Notice of Removal and because the state of the law as to supervisor liability under the NJLAD is evolving, the Court will not award attorneys' fees in this matter, as removal did not lack a good faith basis.

9

## IV. Conclusion

For the reasons set forth herein, Plaintiff's Motion to Remand is Granted In Part and the matter shall be remanded to the New Jersey Superior Court, Burlington County Vicinage. Plaintiff's request for attorney's fees is denied.

An appropriate Order shall issue.


Dated: September 26, 2013

                                               s/ Joseph H. Rodriguez
                                               Hon. Joseph H. Rodriguez,
                                               UNITED STATES DISTRICT JUDGE